IN THE UNITED STATES DISTRICT COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
Case No. 19-2189

UNITED STATES OF AMERICA                    *APPELLEE*

VS.

CLINTON MCDONALD                            *APPELLANT*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

Honorable Douglas Harpool

*APPELLANT'S BRIEF*

*STUART P. HUFFMAN*

MISSOURI BAR NO. 49633
WHITEAKER & WILSON
3315 E. Ridgeview, Suite 3000
SPRINGFIELD, MO 65804
(417) 882-7400

## SUMMARY OF THE CASE AND

## REQUEST FOR ORAL ARGUMENT

The appellant, Clinton McDonald appeals his sentence and judgment of 176 months in the Bureau of Prisons on Counts I (distribution of a controlled substance); 176 months on Count II (distribution of a controlled substance); 120 months on Count III (felon in possession of a firearm), running concurrent with each other.

The appellant plead guilty in front of the Honorable Douglas Harpool on January 23rd, 2019. Judge Harpool accepted the plea and a presentence investigation report was ordered. Argument was presented at sentencing after objections were made by the parties. Appellant was sentenced to 176 months in the Bureau of Prisons on Counts I and II and 120 months in the Bureau of Prisons on Count III, all Counts running concurrent with each other followed by three years of supervised release. The sentence, despite falling within the guidelines is unreasonable. The sentence is substantively unreasonable because the court afforded undue weight to Mr. McDonald's criminal history. The resulting sentence is greater than necessary to satisfy the stated purpose of federal sentencing.

Appellant requested Counsel to file an appeal challenging the District Court's application of the sentencing guidelines the reasonableness of the sentence. The Appellant requests 20-mintues for oral argument.

# TABLE OF CONTENTS

**Item**                                                                                          **Page**

Summary and Request for Oral Argument ................................................................ i

Table of Contents ........................................................................................ ii

Table of Authorities.................................................................................. iii-iv

Jurisdictional Statement ................................................................................ 1

Issue Presented for Review ............................................................................. 2

Statement of the Case .................................................................................. 3

Summary of the Argument .............................................................................. 9

Argument ................................................................................................ 11


THE DISTRICT COURT ABUSED ITS DISCRETION WHEN IT FAILED
TO CONSIDER AND PROPERLY WEIGH ALL RELEVANT FACTORS
WHILE ASSIGNING TOO MUCH SIGNIFICANCE TO FACTORS THAT
WERE NOT AS RELEVANT.

     A. Standard of Review .......................................................................... 11

     B. Governing Principles of Sentencing................................................... 12

     C. Mr. McDonald's Sentences is Substantively Unreasonable.............. 14


Conclusion................................................................................................ 27

Certificate of Compliance ..................................................................... 27

Certificate of Service.......................................................................... 27

Addendum ............................................................................. AD 1-15

## **TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page(s)**


Gall v. United States, 552 U.S. 38 (2007)............................................ .2, 11,12, 14

Rita v. United States, 551 U.S. 338 (2007)........................................ 12

United States v. Austad, 519 F.3d 431 (8th Cir. 2008) .......................... 12

United States v. Barron, 557 F.3d 866 (8th Cir. 2009) .......................... 12

United States v. Battiest, 553 F.3d 1132 (8th Cir. 2009)....................... 11

United States v. Booker, 543 U.S. 220 (2005)...................................... 12

United States v. Lazenby, 439 F.3d 928 (8th Cir. 2006) ................................ 25, 26

United States v. Linderman, 587 F.3d 896 (8th Cir. 2009) ........................... 2,14,18

United States v. Watson, 480 F.3d 1175 (8th Cir. 2007)........................ 26

STATUTES

18 U.S.C. § 3231 ..................................................................... 1

18 U.S.C. § 3553(a)................................................10,12,13, 14, 15, 16, 21, 22 24

18 U.S.C. § 3553(c)(2) .............................................................. 2, 19

21 841(a)(1) ............................................................................ i, 3, 9

21 841 (b)(1)(C) ....................................................................... i, 3, 9

18 U.S.C. 922(g)(1) ................................................................ ii, 3, 9, 15

18 U.S.C. 924 (A)(2) ............................................................... ii, 3, 9

28 U.S.C. § 1291 ......................................................................... 1

SENTENCING GUIDELINES

U.S.S.G. § 2K2.1(a)(3)............................................................... 15

MISCELLANEOUS

LONG-TERM SENTENCES: TIME TO RECONSIDER THE SCALE OF
PUNISHMENT Marc Mauer, 124 UMKC LAW REVIEW [Vol. 87:1 ........... 18, 20

Daniel S. Nagin, Deterrence in the Twenty-First Century: A Review of the
Evidence, 42 CRIME & JUST. 199, 207 (2013). 53 Id. 54 See JENNIFER
BROWNSON ET AL., BUREAU OF JUST. STATISTICS, U.S. DEP'T OF

JUST., NCJ 250546, DRUG USE, DEPENDENCE, AND ABUSE AMONG
STATE PRISONERS AND JAIL INMATES 2007-2009, at 6 tbl. 6 (2017)…….18

RSMO 570.020............................................................................. 22

RSMO 570.170............................................................................. 22

## JURISDICTIONAL STATEMENT

This is an Appeal from a Judgment in a criminal case entered on May 21st, 2019, in the United States District Court for the Western District of Missouri, Southwestern Division, Honorable Douglas Harpool presiding. Appellant, Clinton McDonald, was sentenced was sentenced to a term of 176 months on Count I and II and 120 months imprisonment on Count III months followed by 36 months of supervised release. The Notice of Appeal was filed on May 31st, 2019. No Post Conviction motions have been filed at the District Court. The District Court had jurisdiction of the case under 18 U.S.C. § 3231, and this Court has jurisdiction of this appeal by virtue of 28 U.S.C. § 1291.

Appellate Case: 19-2189    Page: 7    Date Filed: 08/29/2019 Entry ID: 4825059

# STATEMENT OF THE ISSUES

**THE DISTRICT COURT ABUSED ITS DISCRETION WHEN IT FAILED TO CONSIDER AND PROPERLY WEIGH ALL RELEVANT FACTORS, WHILE ASSIGNING TOO MUCH SIGNIFICANCE TO FACTORS THAT WERE NOT RELEVANT.**

Gall v. United States, 552 U.S. 38 (2007)

Rita v. United States, 551 U.S. 338 (2007)

18 U.S.C. 3553(c)

2

## STATEMENT OF THE CASE

Mr. McDonald was charged by a superceding indictment November 20th, 2018 with in Count I with knowingly and intentionally distributed a mixture or substance containing a detectable amount of morphine and codeine, Schedule II controlled substances, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C); Count II with knowingly and intentionally possessed with intent to distribute, a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C) and Count III with having been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly receive and possess, in and affecting interstate commerce, firearms, to wit: a) a Palmetto, model PA-15, 5.56 caliber semi-automatic rifle, bearing serial number PI023454; b) a Glock, model 43, 9 millimeter semi-automatic pistol, bearing serial number BFGU451; c) a Glock, model 22, .40 caliber semi-automatic pistol, bearing serial number SFK266; and d) a J.P. Sauer and Sohn, model 38H, .32 caliber semi-automatic pistol, bearing serial number 415409, which had been transported in interstate commerce, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2). Mr. McDonald entered a plea of guilty to all counts without a plea agreement on January 23rd, 2019. The charges originated out of a crash that took place in Springfield Missouri in which Mr. McDonald was the

Appellate Case: 19-2189     Page: 9     Date Filed: 08/29/2019 Entry ID: 4825059

driver. Two other individuals were in the vehicle as well as passengers. Neither passenger was indicted. A presentence investigation report was ordered by the District Court. The final PSR found that Mr. McDonald had a criminal history score of VI with a total offense level of 29. Mr. McDonald's guidelines were calculated to be 151 months to 188 months, a fine of $30,000 to $1,000,000 and a supervised release term not to exceed three years. Objections were made by Defendant to enhancements contained within the presentence investigation report. Such objections were overruled at sentencing and the calculations as set forth above were adopted by the District Court. On May 21st, 2019, Mr. McDonald was sentenced to 176 months on Counts I and II, 120 months on Count III all counts running concurrent to each other followed by three years of supervised release. This appeal follows.

4

Statement of facts taken from the stipulation of facts agreed upon by the parties in "Docket Report (DR) Entry 27". On March 23, 2016, Springfield, Missouri, Police Department (SPD) Officer Benjamin Lord contacted Mr. McDonald by text message and requested to purchase two grams of heroin from him. At approximately 5 p.m., Officer Lord met Mr. McDonald at 3340 South Campbell Street in Springfield, Greene County, Missouri. Mr. McDonald was already there in a black Mercury four door vehicle. Officer Lord walked up to Mr. McDonald's vehicle and contacted him at the driver's window. Mr. McDonald requested that Officer Lord drop the money in his lap and then take the Taco Bell out of his lap. Officer Lord asked to see the "dope" and Mr. McDonald told him to just take the bag off his lap. Officer Lord dropped the money on Mr. McDonald's lap and took the brown bag off Mr. McDonald's lap. The substance Officer Lord obtained was tested by the Missouri State Highway Patrol (MSHP) lab and determined to be 1.48 grams of a substance containing a mixture of codeine and morphine, which are both Schedule II controlled substances. On July 10, 2018, SPD Officer Brad Nicholson was patrolling in an unmarked police vehicle. He was conducting surveillance of a home in Springfield, Greene County, Missouri. He had received information that the occupants of that residence were selling heroin. Officer Nicholson saw a man exit the home and contact a male inside a white BMW parked in front of the residence. The two conducted what appeared to be a

5

hand-to-hand transaction through the passenger side window. Officer Nicholson followed the BMW when it drove away and conducted a traffic stop for a lane violation. He made contact with the driver, Mr. McDonald. Officer Nicholson could smell the strong odor of burnt marijuana coming from inside the vehicle. Officer Nicholson called for backup and conversed with Mr. McDonald while they were waiting. Mr. McDonald said he had just been released from federal prison for a drug and weapon violation. SPD Officer Martin and Park Ranger Jennifer Holt arrived as backup and Officer Nicholson requested that Mr. McDonald step out of the vehicle. Officer Nicholson told Mr. McDonald he was going to search his vehicle based on the odor of burnt marijuana. In the vehicle, under the dashboard, Officer Nicholson found a small compartment that had in it two baggies that contained a white, chunky substance consistent with heroin and a baggie that contained a green material consistent with marijuana. The suspected heroin was sent to the lab and determined to be 11.87 grams of a mixture or substance containing heroin, a Schedule I controlled substance, a distributive amount. Officer Nicholson placed Mr. McDonald under arrest and searched him incident to arrest. He located approximately $769 in cash and Mr. McDonald's cellular telephone. Mr. McDonald was transported to the Greene County, Missouri, Jail. On August 8, 2018, at 3:42 p.m., SPD Officers Josh McCain and Steven Hartman attempted to conduct a traffic stop near the intersection of Cherry and National, in Springfield,

Appellate Case: 19-2189    Page: 12    Date Filed: 08/29/2019 Entry ID: 4825059

Greene County, Missouri, a location within the Western District of Missouri, on a black 2006 BMW driven by Mr. McDonald. Officers McCain and Hartman followed Mr. McDonald's vehicle. Mr. McDonald pulled into a Burger King parking lot at Cherry and National. The officers pulled in behind him and turned on their emergency lights, attempting to stop Mr. McDonald. Mr. McDonald failed to yield for police and fled in the vehicle at a high rate of speed. The officers pursued the BMW, now activating their sirens. Mr. McDonald sped east on Cherry, running a stop sign at Cherry and John Q. Hammons Parkway, and a solid red stoplight signal at the intersection of Cherry and Kimbrough. The vehicle crashed moments later into the concrete steps of St. Agnes Cathedral at the intersection of Cherry and Jefferson. Officers Hartman and McCain arrived at the crash scene and found that Mr. McDonald remained seated in the drivers' seat of the crashed vehicle. Officers observed that a passenger appeared to have been the front passenger but had been thrown forward onto the dash area and windshield. Another passenger was located in the rear passenger seat behind the driver. While the two officers were waiting on law enforcement assistance, the passenger in the front seat crawled into the back seat. Officers detained all three without incident. Officer Hartman searched Mr. McDonald incident to arrest and found a large amount of currency in his right pants pocket. Officers Hartman and Brad Nicholson conducted an inventory search of the black 2006 BMW and located the following,

a loaded Glock brand, 22 model, .40 caliber semi-automatic pistol, serial number SFK266 in the front passenger side floorboard. On August 8, 2018, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) Special Agent Brian Fox received a description of the firearm seized and listed above. SA Fox has received specialized training in the determination of the interstate movement of firearms and ammunition. SA Fox concluded the firearm in question was not manufactured in the state of Missouri and therefore, would have been transported across a state line at some time during or before McDonald's possession. ATF Task Force Officer Eric Pinegar conducted a function test of the Glock brand, 22 model, .40 caliber semi-automatic pistol and determined it to be fully operational. Mr. McDonald has prior felony convictions in the state of Missouri for possession of a controlled substance and maintaining a public nuisance; in the state of Illinois for possession of a controlled substance, and unlawful possession of a weapon by a felon; and in the United States District Court for the Western District of Missouri for felon in possession of a firearm, all of which are crimes punishable by imprisonment for a term exceeding one year

# SUMMARY OF ARGUMENT

Clinton McDonald was sentenced to 176 months on Counts I and II and 120 months on Count III running concurrent with each other and all existing sentences (D.R. 26) after pleading guilty to in Count I with knowingly and intentionally distributed a mixture or substance containing a detectable amount of morphine and codeine, Schedule II controlled substances, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C); Count II with knowingly and intentionally possessed with intent to distribute, a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C) and Count III with having been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly receive and possess, in and affecting interstate commerce, firearms, to wit: a) a Palmetto, model PA-15, 5.56 caliber semi-automatic rifle, bearing serial number PI023454; b) a Glock, model 43, 9 millimeter semi-automatic pistol, bearing serial number BFGU451; c) a Glock, model 22, .40 caliber semi-automatic pistol, bearing serial number SFK266; and d) a J.P. Sauer and Sohn, model 38H, .32 caliber semi-automatic pistol, bearing serial number 415409, which had been transported in interstate commerce, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

9

Despite the sentence falling within the range calculated by the Guidelines, the sentence is unreasonable. The District Court committed error in that the sentence is substantively unreasonable because it is far greater than necessary to accomplish federal sentencing goals. The District Court failed to assign proper weight to the 3553(a) sentencing factors by inappropriately affording too much credence to Mr. McDonald's criminal history and the need to protect the public while ignoring other mitigating factors. The resulting sentence creates a sentencing disparity among unindicted co-conspirators and the passengers in the vehicle were who not indicted. Accordingly, Mr. McDonald respectfully requests this Court to vacate his sentence and remand the case to the District Court for resentencing.

# ARGUMENT

## I. THE DISTRICT COURT ABUSED ITS DISCRETION WHEN IT FAILED TO CONSIDER AND PROPERLY WEIGH ALL RELEVANT FACTORS, WHILE ASSIGNING TOO MUCH SIGNIFICANCE TO IRRELEVANT FACTORS.

Mr. McDonald proposed a sentence of no more than 84-96 months, but received a sentence of 176 months (Sentencing Transcript (S.T.R) 73), despite presenting legal and factual arguments to the court that would support the lower sentence. Mr. McDonald contends that his sentence is particularly unreasonable given that no other person who was involved was indicted or sentenced in the federal Court.

A. Standard of Review

Appellate review of a defendant's sentence is limited to determining whether the sentence is "reasonable." *United States* v. *Battiest*, 553 F.3d 1132 (8th Cir. 2009) at 1135 (citing *Gall v. United States*, 552 U.S. 38, 51 (2007). If the reviewing court finds that no procedural error occurred, then the "substantive reasonableness of the sentence" will be reviewed under a deferential abuse of discretion standard, taking the totality of the circumstances into consideration. *Gall*, 552 U.S. at 51. "If the sentence is outside the Guidelines range . . . [the appellate court] may consider the extent of the deviation, but must give due

deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.*

  B. Governing Principles of Sentencing

It is well settled that the United States Sentencing Guidelines are only advisory. *United States v. Booker*, 543 U.S. 220 (2005). While *Booker* requires the sentencing court to consider the Guidelines, the Guidelines comprise only one of the factors that the district court must consider when structuring a sentence. *Gall*, 552 U.S. 38. The court is also required to consider the factors articulated in § 3553(a), and has discretion to tailor a sentence based on these factors. *United States v. Barron*, 557 F. 3d 866, 868 (8th Cir. 2009). In addition, the district court is strictly prohibited from presuming that a sentence within the advisory Guideline range is necessarily appropriate. *United States v. Rita*, 551 U.S. 338 (2007). The sentencing court is further prohibited from requiring a showing of "extraordinary circumstances" or "any mathematical proportionality assessment" in order to justify a sentence outside the Guidelines range. *United States v. Austad*, 519 F.3 431, 435 (8th Cir. 2008). Instead, the sentencing court "must make an individualized assessment based on the facts presented and upon a thorough consideration of all of the § 3553(a) factors." *Gall*, 552 U.S. at 50. The court is afforded latitude so it may formulate a sentence that is sufficient but not greater than necessary to achieve the four purposes of sentencing. *Barron*, 557 F. 3d at

868. Specifically, § 3553(a) provides, in relevant part, that when determining a particular sentence, the district court must consider the following: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for . . .the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; (5) any pertinent policy statement . . . issued by the Sentencing Commission [including the advisory guideline range]; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. While neither this statute nor *Booker* intimates that any one of these factors should be given greater weight than another, it is important to be mindful that all factors are subservient to § 3553(a)'s mandate to impose a sentence that is "sufficient but not greater than necessary" to comply with the four sentencing purposes of paragraph 2: retribution, deterrence, incapacitation, and

rehabilitation. "The district court abuses its discretion under § 3553(a) when it 'fails to consider a relevant factor that should have received significant weight [,] . . . gives significant weight to an improper or irrelevant factor[,] or . . . considers only the appropriate factors but in weighing those factors commits a clear error of judgment.'" United States v.*Linderman*, 587 F.3d 896 (8th Cir. 2009)(citing Gall).

C. Mr. McDonald's Sentence is Substantively Unreasonable.

In Mr. McDonald's case, the sentencing court failed to afford proper significance to many of the requisite sentencing factors under § 3553(a). Several relevant factors were seemingly completely disregarded. Other factors with less relevancy, such as his long dated criminal history (S.Tr. 65), was made the focal point and assigned far more importance than warranted under the totality of the circumstances. The resulting sentence is far greater than necessary to achieve federal sentencing goals.

i.      The Sentence Fails to Satisfy § 3553(a)'s Parsimony Clause.

Above all else, the sentencing court must adhere to the parsimony clause of § 3553(a), which unequivocally dictates that a sentence be sufficient, but not greater than necessary, to accomplish the four stated purposes of sentencing. This requirement is not just another factor for the court to take under advisement, rather it sets an independent limit on the sentence. It is Mr. McDonald's contention that his 176-month sentence violates this directive because a lesser sentence would be

adequate to achieve these goals. Mr. McDonald would argue that there is not any evidence or analysis as to why a sentence of 84-96 months would not serve the same purpose as a sentence of 176 months.

**Retribution**:   The sentence should reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. § 3553(a)(2)(A). In this case, the sentencing guidelines overstate the seriousness of the actual offense.  In Counts I and II where Mr. McDonald received his sentence of 176 months, the actual base offense for 11.87 grams of heroin is 14.  Without acceptance of responsibility and a criminal history of VI, his total base offense would be 37-46 months.  However, the range of punishment for these two offenses were up to 20 years or 240 months.  The maximum on Count III was 10 years or 120 months.  However, Counts I and II were grouped with Count III even though drugs were not found on that date and guns were not present during the offense conduct for Counts I and II, both of which occurred long before the events in Count III.  On Count III, Mr. McDonald had a base offense level of 22 for a violation of 18 U.S.C. § 922g(1) under U.S.S.G. §2K2.1(a)(3) for Count III. With enhancements, his total offense level was a 32.   Without any enhancements and with acceptance of responsibility, Mr. McDonald would have had a total offense level of 19 instead of 29 after enhancements.  A total offense level of 22 without acceptance of responsibility would result in a guideline range of 84 to 105 months;

with acceptance of 63-78 months. This is after acknowledging that Mr. McDonald would have a criminal history score of VI (PSR 17). Mr. McDonald recognizes that enhancements are considered by the Court when adopting a final total offense level and criminal history however those enhancements overstate the seriousness of the offense. Mr. McDonald was not found with drugs on his person when the guns were found nor were guns found or seen when either of the drug transactions occurred (D.R. 27). Mr. McDonald has a history of drugs and illegally possessing a firearm (PSR p. 11-14) but would argue that his history does not show a history of violence. The guideline range of 151-188 months (PSR p. 22) is arguably greater than it needs to be to reflect the seriousness of his offense. A sentence of 84-96 months almost doubles the sentence he would have received had he just been charged with Counts I and II. A sentence of 84-96 months would have appropriately reflected the seriousness of the offense.

**Deterrence**: The sentence should provide adequate deterrence to criminal conduct. § 3553(a)(2)(B). Empirical studies indicate that the length of the sentence has virtually no effect in achieving this goal.

On the day of sentencing, judges frequently tell a convicted defendant that they are being sentenced to prison to "send a message" that their criminal behavior will not be tolerated. The human instinct to do so is understandable, but unfortunately, the value of this message is often insignificant. The deterrent effect

Appellate Case: 19-2189   Page: 22   Date Filed: 08/29/2019 Entry ID: 4825059

of the criminal justice system has been studied for hundreds of years, with increasing sophistication in recent decades. In regard to the impact of punishment on potential offenders, a key finding is that deterrence is primarily a function of the certainty of punishment, not its severity.

Daniel Nagin, a leading deterrence scholar in the United States, concluded that "[t]he evidence in support of the deterrent effect of the certainty of punishment is far more consistent and convincing than for the severity of punishment" and that "the effect of certainty rather than severity of punishment reflect[s] a response to the certainty of apprehension." This finding makes intuitive sense. Consider a person who is thinking about stealing a car or burglarizing a local business. If he is thinking rationally, he will take into account a variety of factors when considering how to commit the crime, including time of day, ease of entry, presence of security personnel or technology, or his ability to leave the crime scene. He does this to avoid being caught in the act because being arrested and prosecuted will impose significant burdens on him. Additionally, because he is not planning on being apprehended, he is unlikely to be thinking about how much time he might spend in prison and whether his sentence will be three, five, or seven years. Notably, this example looks at the behavior of a rational person, which rarely fits the picture of a substantial portion of those who actually commit a crime. Many are teenagers seeking peer approval for their illegal behavior, individuals under the influence of

alcohol or drugs at the time of the offense, or who are motivated by economic challenges. Many of these individuals are not even thinking about the risk of being caught, let alone know how much prison time they may face. The limited impact of extending sentence length becomes even more attenuated for long-term incarceration. If the penalty for a second robbery conviction is twenty years and a legislative body increases that penalty to twenty-five, few would-be robbers undeterred by the prospect of "only" a twenty-year sentence would balk at an additional five years. See Daniel S. Nagin, Deterrence in the Twenty-First Century: A Review of the Evidence, 42 CRIME & JUST. 199, 207 (2013). 53 Id. 54 See JENNIFER BROWNSON ET AL., BUREAU OF JUST. STATISTICS, U.S. DEP'T OF JUST., NCJ 250546, DRUG USE, DEPENDENCE, AND ABUSE AMONG STATE PRISONERS AND JAIL INMATES 2007-2009, at 6 tbl. 6 (2017) (between 2007 and 2009, nearly 42% of state prisoners were under the influence of some type of drug at the time of offense) cited by Mauer, 124 UMKC LAW REVIEW [Vol. 87:1}.   Again, there are multiple possible reasons for imposing a given prison term, depending on the circumstances of the crime. But policymakers and judges should be cognizant of the evidence to support any particular goal of sentencing. If the length of a prison term has little deterrent value, it may be time to forego the rationale of "sending a message."

Appellate Case: 19-2189     Page: 24     Date Filed: 08/29/2019 Entry ID: 4825059

Accordingly, here again, Mr. McDonalds 176-month sentence cannot be justified when a 84-96-month sentence would satisfy the same concerns of the Court and would place Mr. McDonald in or under the Bureau of Prisons control for ten to twelve years.

Incapacitation: The sentence should protect the public from further crimes of the defendant. § 3553(a)(2)(C). In this case, the district court placed far too much weight on Mr. McDonald's criminal history (S.Tr. 65-69). At sentencing, the government urged the court to consider Mr. McDonald's criminal history to show he was a danger to the community.

Believing that incarceration inherently improves public safety naturally correlates with a belief that reducing time served in prison would have negative consequences since the affected individuals would no longer be incapacitated. Here, too, the common-sense observation turns out to be incorrect but remains as a significant obstacle to decarceration. A number of real-world case studies, at both state and federal levels, demonstrate that prison populations can be reduced substantially without adverse effects on public safety. Trends in California have been the subject of a good deal of analysis following several initiatives designed to substantially reduce the prison population. One of these, Proposition 47, reclassified a half-dozen property and drug offenses as misdemeanors rather than felonies and required that convictions result in local supervision rather than state

incarceration. The initiative was also applied retroactively, and as of 2017 nearly 4,700 people have been released from prison. A comprehensive analysis by researchers at the University of California Irvine found the shift had no impact on overall crime rates or violent crime. Policy decisions of the U.S. Sentencing Commission over the past decade have also demonstrated that federal sentences can be reduced without adversely affecting crime control goals. The first instance occurred from the Commission's Guidelines amendment change for crack cocaine convictions in 2007, which was made retroactive as of 2008. More than 16,000 individuals had their sentences reduced by about two years (from 107 months to 85 months). A follow-up study compared recidivism rates for similar offenders released before and after the amendment took effect and found no statistically significant difference between the two groups. A second study explored recidivism rates for prisoners affected by the retroactive application of the Fair Sentencing Act, lowering time served in prison by twenty percent (thirty months), and found virtually identical recidivism rates for this group and a comparison group who had served their full sentence prior to the adoption of the Act. Mauer, 124 UMKC LAW REVIEW [Vol. 87:1].

While it is true that Mr. McDonald is not a first-time offender, the criminal history to which the government refers to does not show that Mr. McDonald will continue to engage in criminal behavior nor does it show that Mr. McDonald will

engage in violence in the future. As stated above, the statistics actually show the opposite.

The district court abused its discretion by placing so much significance on criminal history and the need to protect the community.

**Rehabilitation**: The sentence should address the defendant's needs concerning education, vocational training, medical care, or other correctional treatment in the most effective manner possible. § 3553(a)(2)(D). It is clear from reviewing Mr. McDonald's history that he is need of education and treatment. Mr. McDonald does not have his GED and had a GPA at Parkview Highschool of less than a 1.0. He was exposed to drugs at an early age and clearly needs vocational training and education. The Court stated as much when it told him:

> What you need in your life—and you're probably tired of people telling you this—is more education, more work, no drugs, no guns, and no gangs. That is the formula for you to turn your life around. More education, more work, no guns, no gangs, no drugs. (S.Tr. p. 69).

A sentence of 176 months does not address Mr. McDonald's needs regarding education nor vocational training. A sentence of 84-96 months would satisfy the same concerns, allow Mr. McDonald to get his GED, receive vocational training and receive drug treatment while still addressing the need for punishment.

## ii. Nature and Circumstances of the Offense

Pursuant to § 3553(a)(1), the district court must consider the particular nature and circumstances of the defendant's offense. Mr. McDonald in Count I admitted to selling of 1.48 grams of morphine and in Count II with 11.87 grams of heroin. (D.R. 27) If charged in the State court, Mr. McDonald could have faced as little as 3 years in the Missouri Department Corrections up to 10 years under RSMo. 579.020 unless enhanced as prior or persistent offender under RSMo 579. 170. Both cases involved a sale to an undercover officer without any threat of violence or a gun. Count III which had a statutory maximum of 120 months had what could be considered the more egregious conduct involving a high-speed chase and crash resulting in injuries to all three occupants. The government was able to enhance the punishment as to Counts I and II with conduct from Count III leading to an enhanced punishment of 176 months when the actual punishment would be much less had only the weight been used in the drug transactions to determine the total offense level as stated above. Each count on its own while serious does not merit a sentence of 176 months.

The vast use of long-term sentences in the U.S. is an anomaly by international standards, and in line with the position of the United States broadly as a world leader in its use of incarceration. Sentence lengths in most European nations, either by law or practice, rarely exceed twenty years. Perhaps the most

Appellate Case: 19-2189    Page: 28    Date Filed: 08/29/2019 Entry ID: 4825059

compelling evidence in this regard is the prison term of twenty-one years imposed

on Norwegian Anders Breivik, the ultra-right terrorist who killed seventy-seven

people one day in 2011—mostly youths attending a political camp. Under

Norwegian law, the maximum prison term is twenty-one years, which can be

extended for five-year terms if the prisoner is deemed to still pose a risk to public

safety. Contrast this policy with sentencing laws in the U.S., where it is not

unusual for a repeat drug seller who has not engaged in violence to receive a

comparable prison term. The most substantial sentencing contrast between the U.S.

and other nations (in addition to our use of the death penalty) concerns life

imprisonment. While 161,000 individuals are serving life with or without parole in

the U.S., such sentences are an aberration in many nations. Norway abolished life

sentences in 1981; in Denmark and Sweden, lifers can be released after twelve

years and eighteen years of imprisonment, respectively. It is not only European

nations that reject the imposition of life sentences. In Latin America, only six of

nineteen nations maintain statutes that permit life imprisonment, though in many

jurisdictions prison terms can be so lengthy that they constitute de facto life terms.

There is also the practice of the International Criminal Court, which tries cases of

war crimes, genocide, and crimes against humanity. The Court has no provision for

sentences of life without parole and, for those cases in which a life sentence is

imposed, there is a requirement for review after twenty-five years. Within the U.S.,

the American Law Institute ("ALI") adopted its revised Model Penal Code in 2017. The Code's standards line up with the American Bar Association in calling for a length of incarceration that is "no longer than needed to serve the purposes for which it is imposed." Regarding long sentences, the ALI concludes that "terms for single offenses in excess of twenty years are rarely justified on proportionality grounds, and are too long to serve most utilitarian purposes." Mauer, 124 UMKC LAW REVIEW [Vol. 87:1].

### iii.    Individual Characteristics of the Defendant

 Pursuant to § 3553(a)(1) sentencing courts are required to give due consideration to a defendant's individual characteristics.  The District Court focused on the Mr. McDonald's criminal history and his previous conduct while in the Bureau of Prisons (S.Tr. p. 65-68).  The Court indicated it considered the totality of the circumstances however didn't mention any facts or argument as it related to what could be considered mitigation except for commenting on his mother's letter and the love of a mother for a child.  (S.Tr. p. 69).  The District Court should have considered the other individual characteristics of Mr. McDonald before sentencing him to 176 months.

### iv.    The Types of Sentences Available Were Ignored.

 Mr. McDonald, being a reasonable man and was willing to accept responsibility for his criminal behavior and to be sentenced to a term of 84-96 months in the

Bureau of Prisons (S.Tr. p 64). Mr. McDonald understood that probation would not be an option. Mr. McDonald had previously been convicted in the Federal Court and received a sentence of 30-months (P.S.R. p. 12). Here, he was asking for a sentence that more than doubled his previous sentence, a recognition of his need to be punished. Mr. McDonald pled guilty and accepted responsibility for his actions. Accordingly, the district court abused its discretion in sentencing Mr. McDonald to 176 months in the Bureau of Prisons instead of sentence between 84-96 months.

v.     Sentencing Disparities Among Co-Defendants.

Sentencing disparities among similarly situated co-defendants are to be avoided. § 3553(a)(6). In *United States v. Lazenby*, 439 F.3d 928, 934 (8th Cir.2006), this Court recognized that while "[p]erfect parity among sentences imposed on the various members of a criminal conspiracy is no doubt impossible to achieve . . . extreme [disparities]. . . not only fails to serve the legislative intent reflected in § 3553(a)(6), it also suggests an arbitrary level of decision-making that fails to 'promote respect for the law.'" *Lazenby*, involved two co-defendants, convicted of conspiracy to manufacture and distribute methamphetamine. *Id.* at 929. One defendant was sentenced to 12 months and one day, representing a substantial downward variance from the advisory Guidelines range. The other defendant was sentenced to a term of imprisonment of 87 months, which was at the bottom of the

advisory Guidelines range. *Id.* Under the circumstances of the case, this Court found both sentences to be unreasonable and remanded the cases to district court for resentencing. *Id.* By contrast, in *United States v. Watson*, 480 F.3d 1175 (8th Cir. 2007), this Court declined to make a finding that the sentences of two co-defendants were unreasonable, where one defendant was sentenced to 305 months and the other to 136 months. The Court distinguished the sentences in Watson from the sentences in *Lazenby*, finding that the Watson sentences were "derived from different Sentencing Guidelines departures and based upon legitimate distinctions between the two defendants." *Id.* at 1178. Thus, the sentences were not unreasonable where one defendant "received a downward departure for felony murder, along with reductions for acceptance of responsibility and substantial government assistance," while the other defendant received enhancements for his use of a handgun, his leadership role, and a finding that he was more culpable. *Id.*

In Mr. McDonald's case, it is virtually impossible to view the sentences imposed on each of the defendants as anything but disparate. Mr. McDonald was charged in Count III with unlawful possession of a firearm. In the car with Mr. McDonald were two other individuals, each with their own criminal history. Neither of the two other individuals were charged with guns which left sole responsibility on Mr. McDonald. The only individual punished for the events of that day was Mr.

McDonald. It clearly was an abuse of discretion and this Court should remand for resentencing.

## **CONCLUSION**

Based on the forgoing, Appellant Clinton McDonald respectfully requests that his sentence be vacated and the case be remanded to the District Court for resentencing.

Respectfully submitted,

By: s//Stuart P. Huffman

Stuart P. Huffman
Whiteaker & Wilson
3315 E. Ridgeview, Suite 3000
Springfield, MO 65804
Telephone: (417) 882-7400
Fax: (417) 882-6101

*On behalf of Clinton McDonald, Appellant.*

## **CERTIFICATE OF SERVICE/COMPLIANCE**

In accordance with Rule 49(a), (b) and (d), Fed. R. Crim. P., and Rule 5(b), Fed. R. Civ. P., it is hereby CERTIFIED that the foregoing is being electronically submitted to the Eighth Circuit Court of Appeals and Josephine Larison, Assistant United States Attorney, 901 S. Louis Street, Suite 500, Springfield, MO 65806, on this 29th day of August, 2019.

By: s//Stuart P. Huffman _
STUART P. HUFFMAN
Missouri Bar No. 49633

I hereby certify that the foregoing brief complies with the page limitation (no more than 1,300 lines of monospaced type) as set forth in Fed. R. App. P. 32(a)(7)(C) and contains 5,952 words. I further certify that Microsoft Word for Windows, Times New Roman Font Face in Font size 14 was used to prepare this brief, and that it is being electronically submitted in compliance with Eighth Circuit Rule 28A(c).

By: s//Stuart P. Huffman _
STUART P. HUFFMAN
Missouri Bar No. 49633

## **ADDENDUM**

JUDGMENT AND COMMITMENT, MAY 28TH 2019,        AD1-5